**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FRANCISCO DEMOSCOSO,

                Petitioner,

                v.

STEVEN JOHNSON,

                Respondent.

Civil Action No. 18-3826 (ES)

OPINION

SALAS, DISTRICT JUDGE

    Petitioner Francisco Demoscoso, a state prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.E. No. 1 ("Petition")). Before the Court is Petitioner's unopposed motion for a stay and abeyance so that he may exhaust certain claims before the state courts. (D.E. No. 20, Motion for Stay and Abeyance ("Mot. for Stay")). Having considered the submissions, the Court decides the matter without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated below, the Court DENIES the motion, DENIES the Petition, and DENIES a certificate of appealability.

## I.    BACKGROUND

    In January 2008, Petitioner participated in an altercation outside a nightclub that left one man severely wounded. *See State v. Demoscoso*, No. A-1726-11T3, 2014 WL 1239112, at *1 (N.J. Super. Ct. App. Div. Mar. 27, 2014). In August and September 2010, a jury tried Petitioner for the following charges arising from the altercation: first-degree attempted murder in violation of New Jersey Statutes Annotated ("N.J.S.A.") §§ 2C:5-1, -3 (Count One); second-degree aggravated assault in violation of N.J.S.A. § 2C:12-1(b)(1) (Count Two); fourth-degree unlawful

possession of a weapon in violation of N.J.S.A. § 2C:39-5(d) (Count Three); and third-degree

possession of a weapon for an unlawful purpose in violation of N.J.S.A. § 2C:39-4(d) (Count

Four).  *See id.*

The New Jersey Superior Court, Appellate Division provided the following summary of

the facts and evidence presented at the trial:

> In January 2008, [Petitioner] and his then-girlfriend Maria Monjaras went to a nightclub to help Anna Nieto, who thought her car had been stolen.  [Petitioner] got into a physical altercation with Alfredo Moran outside the nightclub.  Monjaras stabbed Moran twice in the rib area in alleged attempts to stop the fight.  [Petitioner] and Monjaras eventually left in Monjaras' car, and Moran walked away, but they all returned to the nightclub shortly thereafter.

> When [Petitioner] and Monjaras returned to the nightclub, they saw Moran.  [Petitioner] cut Moran's nose with a knife, then chased him as he ran away.  [Jorge] Acosta joined [Petitioner], and they returned to the car, which Monjaras was driving.  They found Moran several blocks away, and [Petitioner] and Acosta hit and stabbed him repeatedly.  Moran eventually fell to the ground.  Monjaras yelled to [Petitioner] and Acosta to stop and that the police were coming. [Petitioner] returned to the car with the knife in his hand and blood on his clothing and hands.  On the way home, Monjaras stopped the car and [Petitioner] threw the knife into a sewer.  A helicopter transported Moran to the hospital, where doctors determined that he had collapsed lungs, blood loss, injury to blood vessels in his neck, and damage to his spleen and colon.

> Garivaldi Rodriguez, a taxi driver, witnessed the attack.  After [Petitioner], Acosta, and Monjaras left, Rodriguez flagged down a police officer and provided a license plate number and a description of Monjaras' car.  Rodriguez testified at trial but was unable to identify the attackers.

> Moran gave a statement to the police.  He was unable to identify [Petitioner], but he identified Monjaras in a photo array.  At trial he was unable to identify [Petitioner], but testified that the man who stabbed him and cut his nose was the same man he initially fought outside the nightclub.

> A surveillance camera recorded some of the activity outside the nightclub, including a man and woman that Monjaras identified as

[Petitioner] and herself.  In March 2008, Nieto identified Monjaras as the woman in the surveillance video, but stated that she did not know the identity of the man.  Shortly before she testified, detectives informed her that she would be subpoenaed to appear in court, but that she might avoid being subpoenaed if she identified the individuals in the video.  She identified [Petitioner] as the man in the video.  She identified him again at trial, but after testifying, she returned to court and testified that she was unsure about the identification.

Monjaras was charged with attempted murder, aggravated assault, and weapons-related offenses.  She pled guilty to unlawful possession of a weapon.  A condition of her plea agreement was that she would testify truthfully.  At trial, [Petitioner's] counsel attempted to show that she was not credible because she was afraid of deportation and angry with [Petitioner] for impregnating another woman.

The jury had the opportunity to watch the surveillance video.  At the conclusion of the trial, the jury found [Petitioner] guilty on all counts.  The judge imposed an extended fifty-year term of imprisonment on Count One, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, and a concurrent one-year term of imprisonment on Count Three.  Counts Two and Four merged with Count One.

*Id.* at *1–2.

Petitioner challenged his conviction and sentence on direct appeal.  (*See* D.E. No. 12-1 ("Direct Appeal Br.")).  On March 27, 2014, the Appellate Division affirmed Petitioner's conviction and sentence.  *See Demoscoso*, 2014 WL 1239112, at *5.  Thereafter, Petitioner petitioned the New Jersey Supreme Court for certification (*see* D.E. No. 12-4, Pet. for Cert. on Direct Appeal), which the New Jersey Supreme Court denied on October 7, 2014, *see State v. Demoscoso*, 101 A.3d 1081 (N.J. 2014).

Petitioner proceeded to file a Petition for Post-Conviction Relief ("PCR").  (D.E. No. 1-2 at 4–6, Pet. for Post-Conviction Relief).  On February 5, 2016, following a PCR hearing, the PCR court denied Petitioner's PCR in an oral opinion.  (*See* D.E. No. 10-26, PCR Hr'g Tr.).  The

Appellate Division affirmed the denial of Petitioner's PCR petition.  (*See* D.E. No. 12-10, Order Den. PCR Appeal).  Petitioner subsequently filed a petition for certification to the New Jersey Supreme Court.  (*See* D.E. No. 12-11, Pet. for Cert. on PCR Appeal).  The New Jersey Supreme Court denied certification on May 30, 2017.  *See State v. Demoscoso*, 169 A.3d 968, 969 (N.J. 2017).

On March 23, 2018, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (*See* Petition).  The Petition asserts five grounds for relief:

> (i)   Petitioner's Sixth Amendment right to the effective assistance of trial counsel was violated by counsel's failure to conduct a thorough pretrial investigation, contact exculpatory witnesses, or investigate the case as it regards [sic] co-defendant Maria Monjaras and Ana Nieto's motives for testifying ("Ground One");
>
> (ii)  Trial counsel rendered ineffective assistance by failing to confront the issue of juror # 4 apparently sleeping during the trial and failing to move for a mistrial on these grounds ("Ground Two");
>
> (iii) Trial and appellate counsel provided ineffective assistance for their failure to appeal the trial court's denial of a motion for mistrial following repeated attempts by the prosecutor to violate Petitioner's right to a fair trial as guaranteed by the Sixth and Fourteenth Amendments ("Ground Three");
>
> (iv)  Petitioner's allegations as set forth in his previous PCR submissions warranted an evidentiary hearing as they met the "prima facie" standard.  The PCR Court's failure to order such a hearing denied Petitioner his due process rights as guaranteed by the Sixth Amendment ("Ground Four"); and
>
> (v)   Petitioner alleges the sentence imposed was excessive.  An evidentiary hearing was warranted to discuss the aggravating factors used to increase the sentence ("Ground Five").

(*See* Petition at 6–15).

Respondent Stephen Johnson ("Respondent") responded to the petition on July 16, 2018.  (D.E. No. 12, Resp't's Resp.).  Petitioner did not reply.

In an earlier opinion, this Court determined that Petitioner failed to exhaust Ground One and a portion of Ground Four of the Petition.  (D.E. No. 13, Mem. Op.).  Consistent with that opinion, the Court provided Petitioner an opportunity to withdraw his unexhausted claims or request a stay and abeyance while he returns to state court to exhaust them.  (*See id.*).

As a result, Petitioner filed a timely motion for a stay and abeyance.  (*See* Mot. for Stay).  Respondent, in turn, submitted a letter to this Court indicating that he "would have no objection if this Court is inclined to grant petitioner's motion to stay the proceedings."  (*See* D.E. No. 22, Resp't's Letter).  Accordingly, the matter is ripe for determination.

## II.    DISCUSSION

### A.    Motion for a Stay and Abeyance

The Court first considers Petitioner's motion for a stay and abeyance to exhaust Ground One and a portion of Ground Four in state court.  Only in "limited circumstances" may a district court stay a mixed habeas petition containing both unexhausted and exhausted claims.  *Rhines v. Weber*, 544 U.S. 269, 277 (2005).  Specifically, a district court should grant a stay only where "the petitioner has good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Id.* at 278.  A petitioner bears the burden of showing that he is entitled to a stay.  *Roach v. Attorney Gen. of New Jersey*, No. 19-21707, 2021 WL 1578380, at *1 (D.N.J. Apr. 22, 2021) (citing *Urcinoli v. Cathel*, 546 F.3d 269, 275 n.8 (3d Cir. 2008)).

In determining whether good cause exists, the Third Circuit has instructed district courts to consider how much time remains for a petitioner to file a subsequent petition.  *Tarselli v. Superintendent Greene SCI*, 726 F. App'x 869, 875 (3d Cir. 2018).  Generally, good cause exists where the statute of limitations would bar a subsequent petition or even where a petitioner is

reasonably confused about whether a state filing would be timely.  *See id.*; *Heleva v. Brooks*, 581 F.3d 187, 191 (3d Cir. 2009).

With respect to determining whether the unexhausted claims are potentially meritorious, the Third Circuit has expressed approval of an analysis that focuses on whether "at least one of [a petitioner's] unexhausted claims is not 'plainly meritless' . . . ."  *See Tarselli*, 726 F. App'x at 876 (collecting cases from district courts in the Third Circuit applying a similar analysis).  Under this approach, a petitioner's claims are potentially meritorious "unless it is perfectly clear that the petitioner has no hope of prevailing."  *See id.* (holding that "[b]ecause the facts underlying Tarselli's petition for *Miller* relief are not so clear as to render his claim patently meritless, . . . Tarselli's unexhausted claim is potentially meritorious").

"Intentionally dilatory litigation tactics" means abusive tactics or intentional delay.  *See Rhines*, 544 U.S. at 278.  This factor aims to "reduce delays in the execution of state and federal criminal sentences, particularly in capital cases."  *See id.* at 276–78.

In the instant motion, Petitioner moves this Court pursuant to *Rhines* for a stay and abeyance of these proceedings so that he may exhaust Ground One and a portion of Ground Four in the state courts.  (*See* Mot. for Stay).  Although there is no indication that Petitioner has engaged in delaying tactics, *see Rhines*, 544 U.S. at 278, and the applicable statute of limitations would bar any subsequent petition at this point, *see Tarselli*, 726 F. App'x at 875, the Court denies Petitioner's motion because, as explained below, all of Petitioner's unexhausted claims are plainly meritless, *see id.* at 876.

### 1.    Ineffective Assistance of Trial Counsel for Failure to Investigate (Ground One)

Petitioner's first unexhausted claim asserts that his trial counsel was ineffective for "failure to conduct a thorough pre-trial investigation, contact exculpatory witnesses, or to investigate the

case as it regards co-defendant Maria Monjaras and Ana Nieto's motives for testifying." (Petition at 5–8).[1]  Specifically, Petitioner maintains that if counsel had interviewed Paola Tobon, who Petitioner had identified to counsel before trial, counsel would have uncovered evidence that could have been used to impeach Monjaras.  (*See id.* at 7).  According to Petitioner, had Tobon testified, she would have spoken to the animus existing between Petitioner and Monjaras after their relationship ended.  (*See id.*).  This animus, he contends, led Monjaras to plead guilty to reduced charges in exchange for her testimony against him.  (*See id.*).  Petitioner also maintains that trial counsel failed to present to the jury Monjaras' and the State's alleged threats to Nieto.  (*See id.* at 8).  Monjaras told Nieto "don't say shit" to the police, and the State allegedly threatened her regarding her immigration status.  (*See id.*).

The two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington* governs Petitioner's claim of ineffective assistance of trial counsel.  466 U.S. 668, 687 (1984).  To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient.  This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).

A petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.  To establish prejudice, a petitioner "need not establish that the attorney's deficient performance more likely than not altered the outcome" of the petitioner's case, but only that there is a reasonable probability of such an effect upon the outcome of the case.  *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  In the context of an alleged

---

[1]     For pin cites to D.E. Nos. 1 & 12-10, the Court relies on the pagination automatically generated by CM/ECF.

incomplete investigation, this requires a habeas petitioner to make "a comprehensive showing as to what the investigation would have produced.  The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result." *Jones v. United States*, No. 14-1557, 2018 U.S. Dist. LEXIS 125530, at *15–16 (D.N.J. July 23, 2018) (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996)).  Moreover, where a petitioner bases an ineffective assistance of counsel claim on counsel's failure to call a particular witness, a habeas petitioner must present an affidavit or other credible evidentiary support about the particular information that the witness would have provided in order to make a *prima facie* showing of prejudice.  *See Duncan v. Morton*, 256 F.3d 189, 202 (3d Cir. 2001) (determining that a habeas petitioner failed to establish prejudice as a result of counsel's alleged failure to interview a witness because petitioner failed to present any sworn testimony by the witness indicating what the witness's testimony would have been); *see also Tolentino v. United States*, No. 13-4168, 2014 WL 3844807, at *3 (D.N.J. July 31, 2014) ("[A petitioner's] failure to include a sworn statement regarding the nature of [a witness's] proposed testimony is fatal to his making a *prima facie* showing of prejudice.").

Here, Petitioner's ineffective assistance of trial counsel claim for failure to investigate is plainly meritless because the record directly contradicts Petitioner's claim and Petitioner fails to set forth any evidence demonstrating prejudice.  First, Petitioner's counsel raised the issue of the alleged motives of Monjaras and Nieto during trial.  (D.E. No. 12-19, Sept. 8, 2010 Trial Tr., at 100:10–101:22 (eliciting Monjaras' threat to Nieto to "[not] say shit" to the police)); (D.E. No. 12-23, Sept. 16, 2010 Trial Tr., at 23:1–25:6 (noting the State's alleged leverage over Nieto due to

her immigration status)); (D.E. No. 12-23 at 29:10-15 (suggesting that Monjaras changed her story because she found out that Petitioner had gotten another woman pregnant)).

Second, although Petitioner contends that Paola Tobon would have testified as to the animus existing between Petitioner and Monjaras, Petitioner fails to provide an affidavit from Tobon or any other credible evidentiary support to establish prejudice. The absence of any such evidentiary support is fatal to his claim. *See Duncan*, 256 F.3d at 202; *Tolentino*, 2014 WL 3844807, at *3. Accordingly, Ground One is plainly meritless.

### 2.    PCR Court Failed to Conduct an Evidentiary Hearing (Ground Four)

Petitioner's next unexhausted claim asserts that the PCR court erred by failing to conduct an evidentiary hearing regarding ineffective assistance of trial counsel for counsel's failure to conduct a thorough investigation into his case and failure to object, request a curative instruction, or request a mistrial based on the prosecutor's comments. (Petition at 12–13). This claim is plainly meritless because alleged errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("[W]hat occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation."). Accordingly, Ground Four is plainly meritless. As all of Petitioner's unexhausted claims are plainly meritless, this matter does not warrant a stay. *See Tarselli*, 726 F. App'x at 876.

### B.    Merits of the Petition

Having determined that the matter does not warrant a stay, the Court proceeds to analyze the merits of the Petition. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a district court "shall entertain an application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground

that he is in custody in violation of the Constitution or laws or treaties of the United States."

Habeas petitioners bear the burden of establishing their entitlement to relief for each claim

presented in a petition based upon the record that was before the state court. *See Eley v. Erickson*,

712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 41 (2012). District

courts are required to give great deference to the determinations of the state trial and appellate

courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010). Specifically, district courts must defer to the

"last reasoned decision of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d

223, 231–32 (3d Cir. 2009) (internal quotation marks omitted). Moreover, a federal court

reviewing the state court's adjudication under § 2254(d)(1) must confine its examination to

evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).

Where a claim has been adjudicated on the merits by the state courts, the district court shall

not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that

contradicted the governing law set forth in United States Supreme Court precedent or that the state

court confronted a set of facts that were materially indistinguishable from United States Supreme

Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846

(citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "'[C]learly established Federal law' for

purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the United States

Supreme] Court's decisions." *See Woods v. Donald*, 575 U.S. 312, 316 (2015).  An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application.  *Eley*, 712 F.3d at 846 (quoting *Renico*, 559 U.S. at 773).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  *Woods*, 575 U.S. at 316.  Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable."  *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

### 1.    Ineffective Assistance of Trial Counsel for Failure to Investigate (Ground One)

In Ground One, Petitioner asserts that his trial counsel was ineffective for "failure to conduct a thorough pre-trial investigation, contact exculpatory witnesses, or to investigate the case as it regards [to] co-defendant Maria Monjaras and Ana Nieto's motives for testifying."  (Petition at 5–8).  As discussed above, this Court determines that Ground One is plainly meritless.  (*See supra* Sections II.A.1.).  Accordingly, the Court denies Petitioner habeas relief on Ground One.

### 2.    Ineffective Assistance of Trial Counsel Claim (Ground Two)

In Ground Two, Petitioner contends that his trial counsel rendered ineffective assistance by failing to confront the issue of a juror apparently sleeping during the trial and failing to move for a mistrial on these grounds.  (*See* Petition at 8–9).  During trial at a sidebar, co-defendant

Acosta's attorney, Guillermo Arango, informed the Court that a juror "has been sleeping, I think he's been falling asleep for the past 10, 15 minutes." (D.E. No. 12-20, Sept. 9, 2010 Trial Tr., at 75:4-7). In response, Petitioner's trial counsel stated: "I -- I do[ not] know if he is asleep. I think he got [sic] his hand over – across his face." (*Id.* at 75:8-10). The prosecutor added: "I know from your view, Mr. Arango, you can't see the eyes, I can see his eyes." (*Id.* at 75:15-16). After the sidebar concluded, the trial judge conducted a brief voir dire of the juror. (*See id.* at 75:25–76:2). The judge asked if the juror felt ill, to which the juror responded: "I've got a little headache. That's all." (*Id.*). Petitioner contends that his trial counsel was ineffective for not "requesting a short break and putting his reasons for a short voir dire on record." (Petition at 8).

In rejecting this claim on PCR appeal,[2] the Appellate Division noted that "the issue of the sleeping juror could have been raised on direct appeal as the facts underlying this claim were known to [Petitioner] as of the date of the appeal." (D.E. No. 12-10 at 3). Accordingly, the Appellate Division determined that the PCR court "appropriately found that [Petitioner's] petition was substantively barred" under New Jersey Rule 3:22-4(a).[3] (*Id.*).

Respondent argues that Petitioner's claim for ineffective assistance of trial counsel is now barred from federal habeas review under the procedural default doctrine[4] because the PCR court and Appellate Division found it to be substantively barred on state procedural grounds. (*See* D.E.

---

[2]     As the New Jersey Supreme Court summarily denied Petitioner's petition for certification on PCR appeal, *see Demoscoso*, 169 A.3d at 969, the Appellate Division's decision represents the "last reasoned decision of the state courts" as to Ground Two. *See Bond v. Beard,* 539 F.3d 256, 289–90 (3d Cir. 2008) (citation omitted).

[3]     New Jersey Rule 3:22-4(a) provides that, generally, "[a]ny ground for relief not raised in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a [post-conviction relief] proceeding . . . ."

[4]     The procedural default doctrine is an important corollary to the exhaustion requirement, which requires state prisoners to exhaust available state remedies before presenting a claim to a federal habeas court. *See Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). The procedural default doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991).

No. 12 at 38).  The Court need not decide this issue at this time,[5] however, because, as discussed

below, the claim fails on the merits under *de novo* review.[6]

As noted above, in order to prevail on an ineffective assistance of counsel claim, Petitioner

must demonstrate that counsel's performance was deficient and that counsel's allegedly deficient

performance prejudiced Petitioner's defense.  *Strickland*, 466 U.S. at 687.  "To establish deficient

performance, a person challenging a conviction must show that 'counsel's representation fell

below an objective standard of reasonableness.'"  *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that

counsel's representation was within the 'wide range' of reasonable professional assistance,'"  *id.*,

and "affirmatively entertain the possible 'reasons [a petitioner's] counsel may have had for

proceeding as they did.'"  *Cullen*, 563 U.S. at 196.  To show prejudice, a petitioner "need not

establish that the attorney's deficient performance more likely than not altered the outcome" of the

petitioner's case, but only that there is a reasonable probability of such an effect upon the outcome

of the case.  *Nix*, 475 U.S. at 175.

---

[5]     Although the Court refrains from determining this issue, it notes that, "[f]or a federal habeas claim to be barred by procedural default[,] . . . the state rule must have been announced prior to its application in the petitioner's case and must have been 'firmly established and regularly followed.'"  *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017) (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)).  On that point, it appears that New Jersey courts do not regularly apply Rule 3:22-4(a) to ineffective assistance of trial counsel claims not brought on direct appeal, even if the record was adequate to support the claim.  *See Cabrera v. Barbo*, 175 F.3d 307 313, (3d Cir. 1999) ("[T]o the best of our knowledge, the Supreme Court of New Jersey has not applied R. 3:22-4 to bar a post-conviction relief proceeding merely because the petitioner did not raise a proffered ineffective assistance of counsel claim on direct appeal, even if he could have done so."); *see, e.g.*, *Hamilton v. Nogan*, No. 16-5705, 2019 WL 4451440, at *12 n.5 (D.N.J. Sept. 17, 2019).

[6]     Where a state court bars a claim on procedural grounds without addressing its merit, but a federal court nonetheless considers the merits of the claim, the federal court applies *de novo* review to claims, like this one, that raise mixed questions of law and fact.  *See Bey*, 856 F.3d at 236.  Here, the Appellate Division upheld the PCR court's decision with respect to this claim on procedural grounds without considering its merit.  (*See* D.E. No. 12-10 at 3).  Although Respondent contends that the Appellate Division did, in fact, consider the merits of this claim, (*see* D.E. No. 12 at 19), which would trigger AEDPA deference to the Appellate Division's decision on the merits, it appears that the Appellate Division only considered the merits of Petitioner's related ineffective assistance of *appellate* counsel claim, which he did not raise in his habeas petition.  (*See* D.E. No. 12-10 at 4).  Regardless, the Court need not dwell on this point because, as discussed below, Ground Two fails regardless of whether AEDPA deference is applied.

Here, Petitioner fails to satisfy either prong of *Strickland*.   First, Petitioner fails to demonstrate that the juror was sleeping.  (*See* Petition at 8–9).  The record suggests that the juror merely had his hand over his face because he had a headache and that co-defendant's counsel, who had raised the issue to the judge, could not see the juror's eyes from where he was.  (D.E. No. 12-20 at 75:4–76:2).  Without a sufficient showing that the juror was, in fact, sleeping, this Court cannot say that Petitioner was somehow prejudiced by trial counsel's failure to pursue this issue.

Second, even if the juror was sleeping, Petitioner fails to demonstrate that his counsel's performance was deficient.  (*See* Petition at 8–9).  It could have been sound trial strategy to forgo pursuing the sleeping juror issue or moving for a mistrial because, for example, trial counsel might have concluded that pursuing the matter would have been fruitless given the colloquy that occurred at sidebar, or, by way of another example, the juror in question may have been one that trial counsel wanted to keep.  *See, e.g.*, *Sierra v. Bartowski*, No. 11-1860, 2012 U.S. Dist. LEXIS 145378, at *96–98 (D.N.J. Sept. 27, 2012).  Accordingly, this Court cannot say that trial counsel's performance was deficient.  *See Cullen*, 563 U.S. at 196.

Third, even if the juror was sleeping and his trial counsel's performance was deficient, Petitioner fails to establish that any prejudice resulted from the alleged ineffective assistance.  (*See* Petition at 8–9).  Petitioner merely contends that the sleeping juror may have missed Rodriguez's testimony, which he asserts "was highly relevant to what occurred immediately after the parties left the nightclub," and that "the juror's inattention . . .ha[d] the potential to have contributed to petitioner's convictions."  (*Id.*).  Petitioner fails to explain how Rodriguez's testimony helped his cause or demonstrate that the trial court would have granted a motion for a mistrial.  (*See* Petition at 8–9).  Accordingly, Petitioner fails to establish with a reasonable probability that the outcome would have been different had his counsel confronted the issue.  *See Nix*, 475 U.S. at 175.  For

these reasons, the Court denies Petitioner relief as to Ground Two.

### 3. Ineffective Assistance of Trial and Appellate Counsel for Failure to Appeal the Trial Court's Denial of Petitioner's Motion for Mistrial (Ground Three)

In Ground Three Petitioner asserts that his trial and appellate counsel were ineffective for failing to appeal the trial court's denial of Petitioner's motion for mistrial based on prosecutorial misconduct. (*See* Petition at 10–11). During trial, Petitioner's counsel moved for a motion for a mistrial based on the prosecutor's alleged attempt to elicit Petitioner's prior criminal record from co-defendant Monjaras. (*See* D.E. No. 12-19, Sept. 8, 2010 Trial Tr., at 59:15-25). The trial court denied the motion, instructed Monjaras that she was not permitted to comment on Petitioner's criminal record, and issued a curative instruction to the jury. (*See id.* at 71:1–76:24). Petitioner contends his "[a]ppellate counsel was ineffective for not preserving the issue on direct appeal."[7]

As with Petitioner's other ineffective assistance claims, Petitioner must demonstrate that counsel's performance was deficient and that counsel's allegedly deficient performance prejudiced Petitioner's defense. *Strickland*, 466 U.S. at 687. With respect to his claim against appellate counsel for "not preserving the issue on direct appeal," Petitioner fails to demonstrate deficient performance because the record directly contradicts Petitioner's claim. On direct appeal, appellate counsel raised a claim asserting that "the court erred in refusing defense counsel's request for a mistrial." (*See* Direct Appeal Br. at 54–57). The claim alleged that Monjaras's statements

---

[7] Although this Court did not raise the issue of exhaustion with respect to Ground Three in its April 29, 2021, Opinion, (D.E. No. 13), it appears that Petitioner failed to exhaust Ground Three, too. Petitioner did not raise on direct appeal or in his PCR petition an ineffective assistance claim regarding counsel's failure to appeal the denial of Petitioner's motion for a mistrial based on prosecutorial misconduct. (*See* Petition at 3; Direct Appeal Br. at i).

Nevertheless, a habeas court can, if appropriate, deny a petitioner's unexhausted claims on the merits pursuant to 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007). Where, as here, the state courts have not "reached the merits of a claim thereafter presented to a federal habeas court," the federal court must "conduct a *de novo* review over pure legal questions and mixed questions of law and facts . . . ." *Id.* at 429. As ineffective assistance of counsel claims present mixed questions of law and fact, *Hess v. Mazurkiewicz*, 135 F.3d 905, 907 (3d Cir. 1998), this Court proceeds to review this claim *de novo*.

suggested to the jury that Petitioner had a serious prior criminal record and that there was "a reasonable likelihood that the inferences gleaned from these statements led the jury to return verdicts against defendant that it might not otherwise have reached." (*Id.* at 57). Thus, his appellate counsel preserved the issue on direct appeal. Accordingly, Petitioner's claim against appellate counsel is patently meritless.

With respect to Petitioner's claim against trial counsel, Petitioner fails to demonstrate prejudice. (*See* Petition at 10–11). Petitioner was not prejudiced by trial counsel's failure to appeal the issue because the Appellate Division took up the issue and considered its merits on direct appeal. *See Demoscoso*, 2014 WL 1239112, at *4–5. To the extent that trial counsel could have filed an interlocutory appeal, Petitioner fails to demonstrate that there is a reasonable probability that the outcome of the trial would have been different. *See Nix*, 475 U.S. at 175. Accordingly, Petitioner's claim against trial counsel also fails, and this Court denies Petitioner relief on Ground Three.

### 4.       PCR Court Failed to Conduct an Evidentiary Hearing (Ground Four)

In Ground Four, Petitioner claims that the PCR court erred by failing to conduct an evidentiary hearing. (Petition at 12–13). As with the unexhausted portion of Ground Four, (*see supra* Sections II.A.2.), the rest of Ground Four is meritless because errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("[W]hat occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation."). Accordingly, Petitioner is not entitled to relief on Ground Four.

### 5.       Excessive Sentence (Ground Five)

Finally, in Ground Five, Petitioner contends that the sentencing court imposed an excessive

sentence on him and should have conducted an evidentiary hearing to discuss the aggravating

factors used to increase the sentence. (Petition at 14). Further, Petitioner argues that "the

aggravating factors and legal determinations of law utilized to aggravate the sentence violate the

precepts expressed by the United States Supreme Court in *Alleyne v. United States*, [570 U.S. 99

(2013)]." (*Id.*).[8]

First, Petitioner's argument that the trial court should have conducted an evidentiary

hearing to discuss the aggravating factors used to increase the sentence is not cognizable under

Section 2254. Such a claim pertains only to the application of state procedural rules, and, therefore,

federal habeas relief is not available. *See Estelle v. McGuire*, 502 U.S. 62, 66 (1991) (observing

that "federal habeas corpus relief does not lie for errors of state law"); *Gilliard v. Johnson*, No. 16-

2188, 2019 WL 522069, at *10 n.4 (D.N.J. Feb. 11, 2019) (noting that a petitioner's claim based

on the trial court's failure to hold an evidentiary hearing is not cognizable under Section 2254

because such a claim is predicated on state law).[9]

---

[8]      Although Petitioner raised an excessive sentence claim on direct appeal, he failed to "fairly present" any excessive sentence claim based on federal grounds to the state courts. (*See* Direct Appeal Br. at 58–61). To meet the exhaustion requirement, a petitioner must "fairly present" his federal claims to each level of the state courts empowered to hear them, either on direct appeal or in collateral post-conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999). This means that the petitioner must "present a federal claim's factual and legal substance to the state courts in a manner that puts [the state courts] on notice that a federal claim is being asserted." *McCandles v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). "It is not sufficient that all the facts necessary to support the federal claim were before the state courts." *Anderson v. Harless* 459 U.S. 4, 6 (1982).

        Here, Petitioner did not give the state courts "fair notice" that he was asserting a federal claim challenging his sentence based on *Alleyne*. (*See* Direct Appeal Br. at 58–61). Petitioner's briefing cites numerous state law cases based on state law but fails to mention the federal Constitution nor any judicial decision based on the federal Constitution, including *Alleyne*, in regard to his excessive sentence claim. (*See id.*). Accordingly, Petitioner failed to exhaust Ground Five. Nonetheless, as discussed below, this Court will deny Petitioner's claim on the merits pursuant to 28 U.S.C. § 2254(b)(2). *See Taylor*, 504 F.3d at 427.

[9]      Even if this Court construed this allegation as asserting a federal due process claim, which would be cognizable under Section 2254, it would fail still because the trial court afforded Petitioner an opportunity to "discuss" the aggravating factors at the sentencing proceeding, where neither he nor his counsel challenged the aggravating factors. (*See* D.E. No. 12-15, Sentencing Tr., at 3:21–7:2, 7:4-6). Moreover, Petitioner fails to demonstrate that due process entitled him to a separate evidentiary hearing where, as here, the court imposed a sentence within the statutory limits. (*See* Petition at 14).

Second, Petitioner's argument that the sentencing judge violated the Supreme Court's holding in *Alleyne* is patently meritless.  In *Alleyne*, the United States Supreme Court held that any fact that increases the *mandatory minimum* sentence must be submitted to the jury.  570 U.S. at 116.  Here, the jury found Petitioner guilty of first-degree attempted murder, among other things.  (*See* D.E. No. 12-24, Sept. 17, 2010 Trial Tr., at 17:18-23).  That crime alone carried a sentence of between 10 and 20 years in state prison.  (D.E. No. 12-25 at 17:6-7).  Under state law, however, Petitioner was eligible for an extended term of between 10 years and life imprisonment because he was a persistent offender having been previously convicted of eight crimes.  *See* N.J.S.A. § 2C:44-3.  The sentencing court applied the extended term statute and sentenced Petitioner to 50 years in state prison with an 85-percent parole disqualifier based on several aggravating factors.  (*See* D.E. No. 12-25 at 17:4–19:9).  The sentence did not violate the holding in *Alleyne* because the mandatory minimum sentence for the crime for which the jury convicted Petitioner did not increase.  (*See id.*).  Rather, the sentencing judge exercised his discretion to sentence Petitioner above the mandatory minimum sentence in light of the aggravating factors.  (*See id.*)  As no fact that was not submitted to the jury increased the mandatory minimum sentence, this matter does not implicate *Alleyne*.  *See* 570 U.S. at 116.

Third, Petitioner's argument that the sentence imposed is excessive is not cognizable under federal habeas review.  *See Scott v. Thompson*, No. 12-7189, 2014 U.S. Dist. LEXIS 115328, at *4 (E.D. Pa. Jan. 15, 2014) ("[A] federal court will not generally reevaluate a state sentence unless it exceeds the statutory limits.").  Even if it were cognizable, it would not succeed.  The Eighth Amendment proscribes punishment which is grossly disproportionate to the severity of the crime.  *United States v. Miknevich*, 638 F.3d 178, 185 (3d Cir. 2011).  Thus, in an extraordinary case, an excessive sentence will result in a constitutional violation.  *Id.* at 185–86.  However, Petitioner

was convicted of attempted murder and sentenced to less than the maximum proscribed by law, and therefore this Court cannot say that the sentence was disproportionate let alone grossly disproportionate. *See id.* Accordingly, the Court denies Petitioner relief on Ground Five.

### C. Certificate of Appealability

Finally, the Court considers whether to issue a certificate of appealability. A petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner's claims are all without merit and jurists of reason would not disagree with this Court's denial of Petitioner's habeas petition. Accordingly, Petitioner is denied a certificate of appealability.

## III. CONCLUSION

For the reasons stated above, Petitioner's motion for a stay and abeyance is DENIED, the Petition is DENIED, and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

Date: February 28, 2022

                                              */s/ Esther Salas*
                                              **Hon. Esther Salas, U.S.D.J.**